UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2 ------------------------------------------------
*In re:*                              Case No. 08-23404 *(ash)*

3         TRACY HUMPHREY,               New York, New York
4                 *Debtor.*            February 24, 2009

5 ------------------------------------------------

6           TRANSCRIPT OF CHAPTER 13 MOTION HEARING

7          BEFORE THE HONORABLE ADLAI S. HARDIN

                UNITED STATES BANKRUPTCY JUDGE
8

9  A P P E A R A N C E S :

   *For the Debtor:*              EDWARD L. KOESTER, ESQ
10                                1457 Knapp Street, Suite 2
                                  Bronx, New York 10469-3026
11                                (718) 671-8700

12 *For U.S. Trustee's*           RICHARD CHARLES MORRISSEY, ESQ.
   *Office:*                      United States Trustee's Office
13                                33 Whitehall Street, 21st Floor
                                  New York, New York 10004-2112
14                                (212) 510-0500

15 *For the Chapter 13*           JODY L. KAVA, ESQ.
   *Office:*                      Law Office of Jeffrey L Sapir
16                                399 Knollwood Road
                                  White Plains, New York 10603-1931
17                                (914) 328-7272

18
   *For Washington Mutual:*       TAMMY L. TERRELL, ESQ.
19                                Fein, Such, Kahn & Shepard, P.C.
                                  7 Century Drive, Suite 201,
20                                Parsippany, NJ 07054
                                  (973) 538-4700, ext.134
21                                (973) 538-9915 fax

22 *Transcription Service:*       AAA Electronic Sound Reporters
                                  1133 Broadway, Suite 706
23                                New York, New York 10010
                                  (888) 886-5135; (800) 860-5722 fax
24

25        *Proceedings recorded by electronic sound recording.*
            *Transcript produced by transcription service.*

*In re Tracy Humphrey - 2/24/09*                                    2

1          COURTROOM DEPUTY:  Humphrey?

2          THE COURT:  What page is that on, do we know?  Tracy

3    Humphrey.

4          COURTROOM DEPUTY:  Tracy Humphrey, 08-23404 --

5          THE COURT:  Page 11.

6          COURTROOM DEPUTY:  About page 10 or 11.

7          THE COURT:  Okay.

8          COURTROOM DEPUTY:  Thank you.

9          MR. KOESTER:  Good morning, Your Honor, Edward Koester

10   for the Debtor, Tracy Humphrey.

11         THE COURT:  Okay.  Are you Tracey Humphrey?

12         MS. HUMPHREY:  Yes.

13         THE COURT:  Okay.

14         MS. TERRELL:  Good morning, Your Honor, Tammie

15   Terrell, Fein, Such & Kahn, on behalf of Washington Mutual.

16         THE COURT:  Okay.

17         MR. MORRISSEY:  And, Your Honor, Richard Morrissey for

18   the U.S. Trustee.

19         THE COURT:  Okay.  A couple of questions.  I take it

20   this is not a residence.  This is not the Debtor's residence.

21         MR. KOESTER:  That is correct, Your Honor.  It was at

22   one time.  They originally purchased it as a condominium and

23   then they purchased their primary home in Cortland a couple of

24   years later.

25         THE COURT:  So, this is basically in effect a

*In re Tracy Humphrey - 2/24/09*                                    3

1   commercial property.  They lease it to somebody?

2            MR. KOESTER:  Yes, they do, Your Honor.

3            THE COURT:  I see.  All right.  Well, I read your

4   opposing submission, Ms. Terrell, and you basically say that the

5   attorneys for the secured creditor became aware of the

6   bankruptcy filing on January 9, is that right?

7            MS. TERRELL:  That's correct, Your Honor.  Our office

8   received a call from counsel advising us that this was an active

9   bankruptcy.  At that point we immediately ceased the State

10  action; we pulled the Judgment back.  We advised our client they

11  need to accept payments.  I've spoken at great length with our

12  client and they've indicated that they were not aware that she

13  was in bankruptcy until they were notified by our office.

14           THE COURT:  Well, let me ask you this, Fein, Such &

15  Kahn appears five times on the bankruptcy -- what do you call

16  this thing?

17           MS. KAVA:  Matrix.

18           THE COURT:  A matrix.  Five times.  And the correct

19  address is there.  And it appears by itself several times, two

20  different addresses.  Both of which by the way are correct.

21           MS. TERRELL:  That's correct, Your Honor.

22           THE COURT:  And it appears under the -- in addition

23  under the name J.P. Morgan Chase and also -- twice, in addition

24  Washington Mutual appears.  And nobody suggested that that

25  address for Washington Mutual isn't the correct address.

*In re Tracy Humphrey - 2/24/09*                                    4

1          MS. TERRELL:  That's correct, Your Honor, I did see --

2          THE COURT:  Is it the correct address?

3          MS. TERRELL:  I spoke with my client and I read them

4     the address, and they were not clear as to where that address

5     came from.  I don't know if it was on correspondence.

6          THE COURT:  Is it the correct address?

7          MS. TERRELL:  I'm sorry?

8          THE COURT:  Is it the correct address?

9          MS. TERRELL:  They --

10         THE COURT:  Yes or no?

11         MS. TERRELL:  My answer would be no.  They indicated

12    to me that that is not the correct address.

13         THE COURT:  Well, what do you say to that, Mr.

14    Koester?

15         MR. KOESTER:  I'd say that I've been in communication

16    with them, Your Honor, and they have returned payments to my

17    client.

18         THE COURT:  At that address, P.O. Box --

19         MR. KOESTER:  P.O. Box, by certified mail, return

20    receipt requested.

21         THE COURT:  78148?

22         MR. KOESTER:  That is correct.   78148, Phoenix,

23    Arizona, Your Honor.  Not once, but twice.  I also, in addition,

24    I thought that Fein Such & Kahn was aware of the Chapter 13

25    filing.  And it wasn't until December when my client brought in

*In re Tracy Humphrey - 2/24/09*                                    5

1   a notice from the Referee that was appointed by the State Court

2   that the foreclosure was moving, and I sent a copy by mail on

3   December the 24th as my opposition to the notice of computation.

4   And a copy of that mailing is attached to my pleadings.

5          And twice did Washington Mutual return certified

6   checks to my client, Your Honor, with a notice from the

7   bankruptcy -- I included a notice from the bankruptcy court, my

8   address, my phone number, I'd be more than happy to talk to you.

9          THE COURT:  What did you address to that address?  To

10  the Phoenix, Arizona address?

11         MR. KOESTER:  I addressed a cover letter containing --

12         THE COURT:  Exhibit?

13         MR. KOESTER:  Yes, it is.  It's Exhibit B, Your Honor,

14  I believe.

15         THE COURT:  "B", okay.  I can look at that.

16         MR. KOESTER:  Oh, I'm sorry, "C".  I'm sorry, "C".

17         THE COURT:  P.O. Box 78148, Phoenix, Arizona, 85062.

18  And the checks that were sent with that letter were returned?

19         MR. KOESTER:  That's correct, Your Honor.

20         THE COURT:  By the bank?

21         MR. KOESTER;  Yes, they were.

22         THE COURT:  In other words, it wasn't that your letter

23  got returned addressee unknown or something?

24         MR. KOESTER:  No.

25         THE COURT:  They returned it --

*In re Tracy Humphrey - 2/24/09*                                  6

1          MR. KOESTER:  To Tracy Humphrey.

2          THE COURT:  To Tracy Humphrey.  Direct to you.

3          MS. HUMPHREY:  Yes.

4          MR. KOESTER:  I have both checks with me today, Your

5    Honor.

6          THE COURT:  Well, what's the answer to that, Ms.

7    Terrell?  Do you think that somebody at WAMU lied to you?  That

8    must be what it was.

9          MS. TERRELL:  Your Honor, I don't think there's

10   communication between the departments.  I think that's a

11   problem.  They have this loan as being in foreclosure so when

12   they get the monthly payment, if it's not the full reinstatement

13   amount, they kick it back.

14         THE COURT:  They're on the matrix.

15         MS. TERRELL:  I understand that, Your Honor.  That's'

16   the information I was provided.  They told me they weren't aware

17   of the bankruptcy filing until our office notified them, which

18   was in January.

19         THE COURT:  Okay.  Well, why weren't you aware of the

20   bankruptcy filing since you were on the matrix five different

21   ways with correct addresses.

22         MS. TERRELL:  We are on the matrix, however, there is

23   a notation on the matrix that one of those addresses may have

24   been bypassed.

25         THE COURT:  What about the other four?

*In re Tracy Humphrey - 2/24/09*                                    7

1        MS. TERRELL:  The other one, I don't have an excuse

2    for that.  I don't know why that is.

3        THE COURT:  Well, isn't there to be a consequence

4    here?

5        MS. TERRELL:  Your Honor, I tried on numerous times to

6    get a hold of Debtor's counsel to try and work this out.

7        THE COURT:  Wait!  Wait!  Wait!  Who did you talk to

8    and when did you try?

9        MS. TERRELL:  I called his office twice yesterday and

10   I spoke with him personally last week.

11       THE COURT:  Oh.

12       MR. KOESTER:  That's true, Your Honor.  She did call

13   me up, but I was --

14       THE COURT:  What, you didn't realize was that I told

15   Mr. Koester, and I also told Ms. Pasquintonio (phonetic) I think

16   it was it was, who was here on your behalf that I didn't care

17   whether you reach an agreement or not, you had to be here.

18       MS. TERRELL:  Well, I understand that.

19       THE COURT:  Yeah.

20       MS. TERRELL:  We were aware of that.

21       THE COURT:  Because I view this as very serious.  Your

22   firm and your client, whether it's WAMU or Chase, submitted a

23   false affidavit, a false certification as to non-payment;

24   demonstratively false, and violated the automatic stay.  That's

25   really serious.

*In re Tracy Humphrey - 2/24/09*                                    8

1          MS. TERRELL:  Your Honor --

2          THE COURT:  Are you familiar with my decisions in

3  Gerstein & Fegan?

4          MS. TERRELL:  I am, Your Honor.  And --

5          THE COURT:  Well, you know how seriously I take it.

6          MS. TERRELL:  I understand that, Your Honor.

7          THE COURT:  What do you think I should do?

8          MS. TERRELL:  Your Honor, I don't have an answer for

9  you.

10          THE COURT:  I'm sorry?

11          MS. TERRELL:  I don't have an answer for you.

12          THE COURT:  Well, maybe you could answer at least

13  this, Ms. Terrell.  Would you look at Paragraph 8 of the

14  worksheet?  Paragraph 10 I mean.  Recoverable balance $2,328, do

15  you see that?

16          MS. TERRELL:  Okay.

17          THE COURT:  What is it?

18          MS. TERRELL:  Generally that would be an expense that

19  was allocated for something such as a BPO or something like

20  that.

21          THE COURT:  Shall I ask you one more time?  What is

22  it?

23          MS. TERRELL: I don't have a detailed breakdown of that

24  today.

25          THE COURT:  Okay.  Are you aware that I asked Ms.

*In re Tracy Humphrey - 2/24/09*                                           9

1  Pasquintonio to pass on to your firm that I raised a question

2  about what that recoverable balance is and why the Debtor's are

3  being charged $2,328 on some undecipherable lingo?

4           MS. TERRELL:  No, Your Honor, I was not.  And if I was

5  aware of that I would have that for you today.  I was not aware

6  of that.

7           THE COURT:  I need your help now because you need to

8  know that I am shocked that your firm which received notice five

9  different was, both individually as a firm and as counsel for

10 Chase, and Washington Mutual would file this motion.

11          I might point out also that your motion recognizes

12 that the amount owed on this morning is about half the market

13 value according to your motion.

14          MS. TERRELL:  Okay.

15          THE COURT:  It's not okay.  That's what your motion

16 says.  So, you see the problem that I have here, a motion has

17 been filed based on false certifications, two of them, one false

18 statement under oath by Sinella Alegic (phonetic).  Do you know

19 who that is?

20          MS. TERRELL:  I do not, Your Honor.

21          THE COURT:  A specialist for J.P. Morgan Chase.  I am

22 fully familiar with the facts and circumstances contained herein

23 and affirm the following under penalty of perjury.  Totally

24 false.  Paragraph 8 is totally false.  Documented totally false.

25 And then the worksheet, or whatever you call this thing, also is

*In re Tracy Humphrey - 2/24/09*                    10

1   signed by the same person, Sinella Alegic.  Well, is there

2   anything more to be said?

3          MS. TERRELL:  Your Honor, the only thing I can say is

4   that once we became aware of it, we took the steps to try and

5   rectify it.

6          THE COURT:  Do you understand why I have a problem

7   with that when your firm is on the matrix five different

8   times --

9          MS. TERRELL:  I do.

10          THE COURT:  -- with the correct addresses?

11          MS. TERRELL:  I do.

12          THE COURT:  Your firm prosecuted the foreclosure as

13   well, correct?

14          MS. TERRELL:  We were working on the foreclosure as

15   well, yes.

16          THE COURT:  Well, I'm going to sanction your client in

17   two ways; one with a substantial punitive sanction for the false

18   statements, and the violation of the automatic stay, and all of

19   the legal fees incurred by the Debtor's counsel --

20          MS. TERRELL:  Okay.

21          THE COURT:  -- in attempting to vindicate this.  And I

22   am mindful of the stipulation in the Sun Kayen (phonetic)

23   case --

24          MS. TERRELL:  Yes.

25          THE COURT:  -- between your office and the office of

*In re Tracy Humphrey - 2/24/09*                    11

1   the United States Trustee.

2             MS. TERRELL:  Right.

3             THE COURT:  And I'm going to refer the matter to -- by

4   the way, has your office referred the matter to the U.S.

5   Trustee's Office?

6             MS. TERRELL:  No, Your Honor, that -- I believe that

7   order wasn't even entered as of yesterday; that stipulation that

8   you're referring to.  It may have been today.  As far as

9   yesterday it wasn't.

10             THE COURT:  It would surprise me if it wasn't docketed

11  yesterday because I ordered that it be done promptly.  Will you

12  follow up on that?  Was the requirement -- oh, you're familiar

13  with this?

14             MS. TERRELL:  Yes, yes.  We reviewed this in detail

15  yesterday.

16             THE COURT:  And you're saying that the stipulation

17  didn't require you to comply with it until the order was

18  docketed?

19             MS. TERRELL:  That's my understanding, Your Honor.

20             THE COURT:  Who are the designated persons?

21             MS. TERRELL:  The partners from our firm, sir?

22             THE COURT:  Yes.

23             MS. TERRELL:  That would be Mario Serra, he signed the

24  stipulation.

25             THE COURT:  Do you have a suggestion, counsel?

*In re Tracy Humphrey - 2/24/09*                          12

1        MR. KOESTER:  Well, Your Honor, I'd like to know who

2   do we pay -- to whom I can transfer these arrears.  I have four

3   months certified checks for four months worth of arrears, Your

4   Honor.  There is a fifth month due for February.

5        We do owe -- Fein, Such & Kahn is correct.  We do owe

6   payments for the period August, the 1, '07 through 9/1/08 for a

7   total of $14,524.30.  We do owe that money, Judge.  And we're

8   willing to pay it.

9        THE COURT:  That's pre-petition?

10       MR. KOESTER:  That's correct, Your Honor.

11       THE COURT:  Yeah.

12       MS. KAVA:  How much is the pre-petition arrears?

13       MR. KOESTER:  $14,524.30.

14       THE COURT:  Does that include this "recoverable

15  balance" of $2,328?

16       MR. KOESTER:  I don't believe so, Your Honor.  The way

17  I read it, there are 13 -- it may, but I don't believe it is.

18  But we do owe monthly mortgage payments from 8/1/07 through

19  9/1/08.  That we do owe.

20       THE COURT:  Yeah.

21       MR. KOESTER:  There's some miscellaneous and late

22  charges, escrow charges that are listed on their claim; that's

23  true we do owe those.  There's a question of attorney's fees for

24  $4,006.82.  That we have a question of whether --

25       THE COURT:  Excuse me?  No, there isn't.

*In re Tracy Humphrey - 2/24/09*                              13

1          MR. KOESTER:  Oh, I have an amendment here.  Maybe I

2   have a different document, Your Honor.

3          THE COURT:  What do you have?

4          MS. TERRELL:  From the proof of claim.

5          MR. KOESTER:  From the proof of claim.

6          THE COURT:  All right.  Well, the proof of claim has

7   been superseded by the worksheet.

8          MR. KOESTER:  Oh, I see.

9          THE COURT:  Which says amount of attorney's fees

10  billed to the Debtor pre-petition.  Is that a pre-petition

11  billing to the Debtor?

12         MR.. KOESTER:  That's a question I have to ask.  I

13  know they did work on the foreclosure, which they did.

14         THE COURT:  Do you know the answer to that, Ms.

15  Terrell?

16         MS. TERRELL:  I don't, Your Honor.  I didn't know the

17  claim was an issue.  If I did I could have brought that

18  information with me, but I don't have it in front of me.

19         THE COURT:  All right.  Can we reply on the rest of

20  the worksheet, by the way?

21         MS. TERRELL:  Yes, Your Honor.

22         THE COURT:  All right.  Ms. Terrell, I'm going to

23  order you to provide a document that will be filed with a

24  caption and everything, and serve it on Mr. Koester, and a

25  chamber's copy, and docket it on ECF, which sets forth the total

*In re Tracy Humphrey - 2/24/09*                    14

1  | amount due on the loan now.

2  |          MS. TERRELL:  Okay.

3  |          THE COURT:  Including every single element of it.

4  |          MS. TERRELL:  Okay.

5  |          THE COURT:  Principal, interest, late charges, escrow.

6  | There will be no attorney's fees.

7  |          MS. TERRELL:  Okay.

8  |          THE COURT:  Attorney's fees will be listed as none.

9  | And if any is claimed, I am now sustaining the objection to the

10 | claim; do you understand?

11 |          MS. TERRELL:  Yes.

12 |          THE COURT:  I will sustain the objection to the

13 | "recoverable balance of $2,328".  That will not appear as the

14 | amount owed.  Do you understand?

15 |          MS. TERRELL:  Yes, I do.

16 |          THE COURT:  I will ask you, Mr. Koester, prepare an

17 | order providing that the creditor is sanctioned $15,000 payable

18 | to the Debtor because of the filing of a motion to lift the stay

19 | containing false representations with regard to the post

20 | petition default, and the violation of the automatic stay.  You

21 | might also mention in the recitations the fact that the amount

22 | claimed to be due is approximately half of the market value of

23 | the property as represented in the worksheet.

24 |          There will also be a sanction in the amount of your

25 | total costs incurred as a result of this motion, including a

*In re Tracy Humphrey - 2/24/09*         15

1   today.  You will leave a blank, annex your day note records

2   attesting to your costs.  And those sanctions will be paid --

3   your costs and fees will be paid to you.  The $15,000 punitive

4   damage claim will be paid to the Debtor.  That should just about

5   wipe out the arrears, I guess.

6        MS. TERRELL:  Yes, Your Honor.  Is there a date by

7   which the $15,000 should be submitted?  Are we going to put that

8   in the order?

9        THE COURT:  Yeah, within five days of the order.  And

10   I'm going to refer the record in this matter to Mr. Zipes of the

11   United States Trustee's Office for such consideration with

12   regard to the firm as he may deem appropriate.

13        MS. TERRELL:  Okay.

14        THE COURT:  All right.  The sanctions will be -- both

15   elements of the sanctions will be paid by the Bank.

16        MS. TERRELL:  Okay.

17        THE COURT:  And I will solicit recommendation or an

18   application of the UST's office with regard to any sanction or

19   consequence with regard to the firm.

20        MS. TERRELL:  Okay.

21        THE COURT:  All right.

22        MR. KOESTER:  Your Honor?

23        THE COURT:  Yes.

24        MR. KOESTER:  Sorry.  Where do I send the post

25   petition payments until everything --

*In re Tracy Humphrey - 2/24/09*                    16

1      THE COURT:  The order -- let me firs order Ms. Terrell

2  to notify Mr. Koester in writing as to where all future payments

3  are to be sent; in writing.  And do that today.

4      MS. TERRELL:  Okay.

5      THE COURT:  And that will be incorporated in the

6  order.

7      MR. KOESTER:  Yes, Your Honor.

8      THE COURT:  Am I overlooking anything?

9      MR. KOESTER:  You still have confirmation to handle

10 then, right?

11     MS. KAVA:  There's still a confirmation hearing, Your

12 Honor, but until all this is worked out, I think we can just put

13 that over to March 24.  Counsel needs to know the actual claims

14 filed, not just the ones --

15     THE COURT:  right.  I think we'll put it over.  Let's

16 be ready to go forward.

17     MS. KAVA:  March 24?

18     THE COURT:  Now, these sanctions will affect the

19 Debtor's plan obviously.

20     MS. KAVA:  It's supposed to be 100 percent plan, Your

21 Honor.

22     THE COURT:  Yeah.

23     MR.  KOESTER:  Your Honor, I understand that I could

24 today on the record, I filed on behalf of Fein Such & Kahn a

25 proof of claim on 12/27/08 for $5,000.  I filed a claim on

*In re Tracy Humphrey - 2/24/09*                    17

 1  behalf of Washington Mutual on the same date, 12/27/08 in the

 2  amount of $12,000 and I filed a claim for Pioneer Credit

 3  Recovery, Inc. in the amount of $3,861.17.  And my understanding

 4  is that orally today, I can make the motion to withdraw those

 5  claims?

 6          THE COURT:  Yes.  I don't know about all the claims.

 7  The Fein Such & Kahn claim is expunged.

 8          MR. KOESTER:  And the Washington Mutual, that would

 9  stand until they come forward, then with their numbers?

10          THE COURT:  That's right.  And I guess that ought to

11  be part of the order that I'm going to sign so there could be

12  absolutely no further dispute at all with regard -- and if there

13  is, when you provide in writing the figures as I've already

14  ordered to Mr. Koester and it will be filed on ECF.  If there is

15  any difference on that bring it to me promptly.  Perhaps even by

16  a conference call.

17          MR. KOESTER:  Thank you, Your Honor.

18          MS. TERRELL:  Your Honor, I just wanted to clarify one

19  thing.  So, the claim that we filed on behalf of our client,

20  that is expunged?

21          THE COURT:  It's going to be superseded, how about

22  that?

23          MS. TERRELL:  Okay.

24          THE COURT:  It will be superseded by what you will

25  file on ECF and then if there are any differences of view it

*In re Tracy Humphrey - 2/24/09*                    18

1   will be resolved in my order and then the claim will have to be

2   expunged.  But there will have to be a claim, won't there?

3   You'll have to have a claim and you'll pay the arrears.

4           MS. KAVA:  It seems to me in the Debtor's best

5   interest to still have the claim on file, pay the arrears

6   through the plan.  It's got to be a 100 percent plan anyway, but

7   the unsecured creditors need to be a little bit resolved.  I'm

8   sure counsel will want to make sure that they get paid through

9   the plan as well.

10          MR. KOESTER:  There's only two; there's only two.

11          MS. KAVA:  That are actual filed claims.  This will be

12  a very fast 100 percent plan.

13          THE COURT:  Yes.  Well, I imagine the sanction of

14  $15,000 will -- it's going to be more than enough I assume to

15  cover the arrears.

16          MR. KOESTER:  That is correct, Your Honor.

17          THE COURT:  I mean the pre-petition arrears.

18          MS. KAVA:  Right, exactly.

19          MR. KOESTER:  The pre-petition arrears, that's

20  correct, Your Honor.

21          THE COURT:  Yes.  And that will leave almost

22  nothing --

23          MR. KOESTER:  That's correct.

24          THE COURT:  -- to be paid to the unsecured creditors

25  and that will be that.  And the matter can be wrapped up.  And -

*In re Tracy Humphrey - 2/24/09*                    19

1  - all right, well, if I haven't articulated it quite right, you

2  will get it all resolved in the order.  Obviously, you'll need

3  to await the data that you get from --

4        MR. KOESTER:  Yes, Your Honor.

5        THE COURT:  -- Ms. Terrell.  And I suggest once you

6  get that, that you email to Ms. Terrell and to Ms. Kava the

7  order that you propose to submit.  And if there are any

8  objections as to form, then let's have a conference call.

9        By form, I mean if either Ms. Kava or Ms. Terrell

10 thinks that the order is not in accordance with what I've set

11 forth today, then let's have a conference call and we'll work it

12 out.  I don't want you all to have to write papers on it.  I'd

13 like to resolve it in the quickest and cheapest easiest way.

14       MR. KOESTER:  Fine, Your Honor.

15       THE COURT:  I do think that there should be

16 recitations of my findings with regard to -- I think actually

17 the -- of course the matrix is a matter of record.  And based

18 upon that, my finding has to be that Washington Mutual or JP

19 Morgan Chase.  I don't know when the takeover was.  Do you

20 remember?

21       MS. TERRELL:  Actually, no.  I have the date.

22       THE COURT:  In any event they were both -- they're

23 both on the matrix, and your firm, as I say, is on the matrix in

24 numerous different ways.  And I take it your firm was active in

25 representing Washington Mutual in the foreclosure action?

*In re Tracy Humphrey - 2/24/09*                    20

1          MS. TERRELL:  Yes, Your Honor.  Yes.

2          THE COURT:  Okay.  So, if you've got something

3    addressed just to Fein Such & Kahn either at 7 Century Drive or

4    747 Chestnut Ridge Road, you would have, without any question,

5    been able to trace it to this Debtor.

6          MS. TERRELL:  If something had been received, yes.

7          THE COURT:  I assume you're not really asking me to

8    believe that the matrix wasn't -- that there wasn't an honest

9    mailing.  Who does the mailing, Tisi (phonetic)?

10         MS. TISI:  The clerk's office.

11         THE COURT:  The clerk's office.  It's hard for me to

12   believe that with Fein Such & Kahn on here five different ways,

13   each one with a correct address, that your firm wouldn't have

14   received it.

15         MS. TERRELL:  Your Honor, I mean I looked through the

16   file at great length and spoke with people in the foreclosure

17   department we didn't have it on record until we got the phone

18   call from Debtor's counsel.

19         THE COURT:  Which?  The one in December or January?

20         MS. TERRELL:  Yes, January.

21         THE COURT:  Okay.  Well, it seems to me the appearance

22   on the mailing matrix five different times would be fairly

23   strong prima facie evidence that your firm got notice.  All

24   right.

25         MS. TERRELL:  Your Honor, just one quick thing.

*In re Tracy Humphrey - 2/24/09*                    21

1          THE COURT:  And I want the recitation about violating

2    the automatic stay and the false representations with regard to

3    the lack of post-petition payments.  Yes?

4          MS. TERRELL:  The breakdown that you wanted us to file

5    with the Court, when would you like that filed by?

6          THE COURT:  How about a couple of days?

7          MS. TERRELL:  Okay.

8          THE COURT:  It shouldn't take more than that.

9          MS. TERRELL:  I wouldn't think so.

10         THE COURT:  Okay.  If there are any issues that arise

11   between the parties with regard to what we've talked about, call

12   me up immediately and we'll have a conference call and try to

13   resolve them, okay?

14         MR. KOESTER:  Thank you, Your Honor.

15         MS. TERRELL:  Thank you.

16         MS. KAVA:  Thank you, Your Honor.

17         THE COURT:  Thank you very much.

18         MR. MORRISSEY: Thank you.

19         THE COURT:  Oh, Mr. Koester?

20         MR. KOESTER:  Yes, Your Honor.

21         THE COURT:  Have you worked out the problems with

22   GMAC?

23         MR. KOESTER:  I filed an objection, Your Honor.

24   According to the original filing, I have to be back here

25   tomorrow morning.

*In re Tracy Humphrey - 2/24/09*                    22

1        THE COURT:  It's on tomorrow.

2        MR. KOESTER:  It's on tomorrow.  I'll be back here.

3        THE COURT:  They haven't --

4        MR. KOESTER:  No, they haven't got back -- I only

5   answered -- I only did it over the weekend, Your Honor --

6        THE COURT:  Okay.

7        MR. KOESTER:  -- so I don't -- I'm going to come in

8   tomorrow morning.

9        THE COURT:  Okay.

10       MR. KOESTER:  What is it 9:30 or 9:45?

11       THE COURT:  I have that somewhere.  9:45.

12       MR. KOESTER:  9:45.  Fine, Your Honor.

13       THE COURT:  But I suggest you call them.

14       MR. KOESTER:  Okay.

15       THE COURT:  Because maybe it's worked out and then

16  neither one of you has to be here.

17       MR. KOESTER:  I'll give them a call when I get back to

18  the office, Your Honor.

19       THE COURT:  All right.

20       MR. KOESTER:  Thank you, sir.  And then I'll let the

21  Court know the first thing in the morning.

22       THE COURT:  All right.  Good luck to you.

23       MS. HUMPHREY:  Thank you.

24                      - o0o -

25

1                              CERTIFICATION

2

3        I, Rochelle V. Grant, certify that the foregoing is a

4   correct transcript from the official electronic sound recording

5   of the proceedings in the above-entitled matter.

6

7   Dated:  March 16, 2009

8                              _____
                               Signature of Approved Transcriber
9

10                             _____
                                    Rochelle V. Grant
11                             Typed or Printed Name

12

13

14

15

16

17

18

19

20

21

22

23

24

25